**Glenna M. DUNCAN, Administratrix of the Estate of James Arthur Duncan, Jr., Deceased, Plaintiff,**

v.

**HONDA MOTOR COMPANY, LTD., a foreign corporation; Honda Research and Development Company, Ltd., a foreign corporation; and American Honda Motor Company, Inc., a foreign corporation, Defendants.**

Civ. A. No. 90–0898.

United States District Court, W.D. Pennsylvania.

April 2, 1991.

Richard J. Catalano, Pittsburgh, Pa., Joel D. Fogel, Leasfield and Blackburn, Miami, Fla., for plaintiff.

William Pietragallo, II, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

This case arises out of a motorcycle accident which occurred on June 1, 1989, on State Route 56 in Indiana County, Pennsylvania. In that accident, James Arthur Duncan, Jr., husband of the plaintiff, Glenna M. Duncan, suffered injuries which caused his death. Presently pending before this court is the plaintiff's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56 as to the liability of Honda Motor Company, Ltd., Honda Research and Development Company, Ltd. and American Honda Company, Inc. ("the defendants").

On May 25, 1990, the plaintiff, on her own behalf as the decedent's surviving spouse and on behalf of the decedent's children, brought action as administratrix of the decedent's estate against the defendants pursuant to the Pennsylvania wrongful death and survival acts (42 Pa.C.S.A. §§ 8301 and 8302, respectively). In her Complaint, the plaintiff alleges that the defendants, as the designers, manufacturers and distributors of the 1983 Honda 750–Shadow motorcycle which the decedent was operating immediately prior to his death were the direct and proximate cause

of the death of the decedent. More specifically, the plaintiff alleges that the sidestand of the motorcycle was defective. Plaintiff alleges that the sidestand was inadvertently left down by the decedent and failed to retract upon coming into contact with the road surface, thereby causing the decedent to lose control of the motorcycle and suffer fatal injuries. Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1332(a)(1), diversity jurisdiction.

On January 9, 1991, the plaintiff moved for partial summary judgment against the defendants as to liability pursuant to Fed. R.Civ.P. 56. Plaintiff argues that the failure of the motorcycle's sidestand to retract when it came into contact with the road surface as is required by Federal regulations constitutes negligence per se on the part of the defendants. 49 C.F.R. § 571.123 ("Safety Standard No. 123"), promulgated pursuant to the National Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381, *et seq.* ("the Safety Act"). Plaintiff further argues that the report of Pennsylvania state trooper investigating the accident and the affidavit of plaintiff's expert witness show there is no genuine issue as to any material fact that the defendants' violation of Safety Standard No. 123 was the cause of the decedent's death. As a result, the plaintiff is entitled to judgment as a matter of law. The defendants filed both a reply and a brief in opposition to plaintiff's motion for partial summary judgment on February 11, 1991. On February 22, 1991, the plaintiff filed a reply to defendants' brief in opposition.

The standard applicable for determining whether summary judgment is appropriate is well established by the Federal Rules as well as by the Third Circuit. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *Williams v. Borough of West Chester*, 891 F.2d 458, 463–464 (3rd Cir.1989). However, summary judgment is an extreme remedy and should not be granted when there is a disagreement about the facts or the proper inferences which a factfinder could draw from

them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3rd Cir.1982).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Put in the negative, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Electric Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Metro Transportation Co. v. North Star Reinsurance Co.*, 912 F.2d 672, 678 (3rd Cir.1990).

Whether a fact is material is determined by the substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *United States v. 225 Cartons*, 871 F.2d 409, 419 (3rd Cir.1989). The substantive law applicable in the instant case is that of Pennsylvania concerning negligence per se. The Third Circuit has defined negligence per se under Pennsylvania law in this manner:

> The violation of a federal statute or regulation may provide the basis for a finding of liability under Pennsylvania law provided three elements are present: 1) the statute or regulation must clearly apply to the conduct of the defendant; 2) the defendant must violate the statute or regulation; and 3) the violation of the statute must proximately cause the plaintiff's injuries.

*Cecile Industries, Inc. v. U.S.*, 793 F.2d 97, 99 (3rd Cir.1986), quoting *Karle v. National Fuel Gas Distribution Corp.*, 448 F.Supp. 753, 767 (W.D.Pa.1978). Further, before violation of a statute will be deemed to constitute negligence, the court must find that the intent of the statute was, at least in part, to protect the plaintiff individually as opposed to the public. *Cecile* at 99–100, citing *Ennis v. Atkin*, 354 Pa. 165, 47 A.2d 217, 219 (1946).

The burden of showing that no genuine issue of material fact exists is subject to shifting from the moving party to the nonmoving party in proceedings on a Rule 56 motion. The moving party, plaintiff here,

has the burden of showing that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Williams* at 464. Specifically, the Court in *Celotex* said:

"In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and *on which that party will bear the burden of proof at trial.*"

*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (emphasis supplied).

Under Pennsylvania law, the plaintiff in a negligence per se action bears the burden of proving at trial that the decedent's injuries were proximately caused by the defendants' negligence. *Congini v. Portersville Valve Co.,* 504 Pa. 157, 470 A.2d 515, 518 (1983); *see also Folino v. Young,* 368 Pa.Super. 220, 533 A.2d 1034, 1037 (1987).

If the moving party sustains this burden, the nonmoving party cannot simply rely on mere allegations or on denials of the moving party's pleading. F.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Cooley v. Pennsylvania Housing Finance Agency,* 830 F.2d 469, 474 (3rd Cir. 1987). The nonmoving party must introduce specific evidence showing that there is a genuine issue for trial. F.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Williams* at 464.

The court will now examine whether a genuine issue of material fact exists in the instant case as to each of the elements of negligence per se under Pennsylvania law. Two such elements may be dealt with summarily.

Safety Standard No. 123 clearly applies to the conduct of the defendants. "This standard applies to motorcycles equipped with handlebars, except for those motorcycles that are designed, and sold exclusively for use by law enforcement agencies." 49 C.F.R. § 571.123 S3. The defendants' conduct in designing, manufacturing and distributing motorcycles produced the motorcycle at issue, a motorcycle equipped with handlebars and not within the exception to Safety Standard 123's application.

Also, the intent of this regulation was clearly to protect the decedent individually. "The purpose of the [S]afety [A]ct is to protect the public against the unreasonable risk of accidents which might be caused by defects in the design, construction or performance of motor vehicles and against the unreasonable *risk of death or injury in the event of such accidents.*" *United States v. Ford Motor Co.,* 574 F.2d 534, 539 (D.C.Cir.1978) (emphasis supplied). As succinctly put by one of our sister courts, the persons "intended to be protected by the Safety Act and the regulations thereunder.... [include] those using the highways both as drivers and passengers". *George Byers Sons, Inc. v. East Europe Import Export Inc.,* 463 F.Supp. 135, 139 (D.Md. 1979). Safety Standard 123 itself supports this interpretation of Congressional intent. "The purpose of this standard is to minimize accidents caused by operator error in responding to the motorcycling environment, by standardizing certain motorcycle controls and displays." 49 C.F.R. § 571.-123 S2.

The determination of whether any genuine issue of material fact exists as to the violation and causation elements of negligence per se presents the very crux of this motion. Although it is possible to have a violation of the standard but no causation by such a violation, the facts of this case dictate that these two elements are inextricably joined together for determination. Without eyewitness testimony to the effect that the sidestand failed to retract when it struck the ground, the only manner in which plaintiff can prove that the motorcycle's sidestand violated Safety Standard 123 is to prove that the accident was caused by the sidestand striking the ground and failing to retract—in other words, the only way to prove a violation of Safety Standard 123 is to prove the entire case.

The evidence presented must be considered in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at

248–249, 106 S.Ct. at 2510; *Baker v. Lukens Steel Co.,* 793 F.2d 509, 511 (3rd Cir. 1986). Also, the nonmoving party must receive the benefit of all reasonable inferences arising from that evidence. *Gans v. Mundy,* 762 F.2d 338, 341 (3rd Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

As evidence of defendants' violation of Safety Standard 123 and the causation thereby of decedent's death, the plaintiff offers the report of the Pennsylvania state trooper who investigated the scene at time of the accident. On page 2 of his report, the investigating trooper states that "...[decedent] failed to retract [motorcycle's] kick stand after obtaining gasoline just prior to the accident ... apparently caus[ing] [decedent] to lose control of his motorcycle". He further states that "[motorcycle's] kick stand made contact to the asphalt surface which caused [motorcycle] to flip onto its right side ...". The trooper then provides on pages 4 and 9 of his report a narrative and illustrative depiction of his measurements at the accident scene and his interpretation of his findings. In all, the motorcycle travelled 145 feet after impacting the right hand guard rail of Route 56, eventually coming to rest on the left hand berm of the road. Specific mention is made of the "scuffed and shiny" state of the sidestand's underside, "indicating that [sidestand] had been dragged recently on roadway". The trooper interpreted the 215 foot scratch mark on the road surface from the westbound lane to the initial point of impact of the motorcycle/decedent with the guardrail as one made by the motorcycle's sidestand.

The several eyewitnesses who were interviewed could add little to the trooper's report. One eyewitness stated that he saw the motorcycle and the decedent slide into the guardrail and that "the guy on the bike was going sideways rolling". No mention was made of observing the kickstand contacting the road surface. The attendant at the gas station where decedent had just previously purchased gasoline also did not report to the trooper anything concerning the motorcycle's sidestand being left down upon decedent's leaving the station.

In addition to the trooper's report, the plaintiff further offers the affidavit of one Dror Kopernik, an expert in the field of motorcycle accidents caused by sidestand retraction failures. Kopernik determined after an examination of the motorcycle that the failure of the motorcycle's sidestand to retract was the cause of decedent's loss of control of the motorcycle and ultimately the decedent's death.

The plaintiff has made a strong offer of proof that the failure of the motorcycle's sidestand to retract was the cause of the decedent's loss of control of the motorcycle. The burden here shifts to the defendants to show that a genuine issue of material fact does exist as to violation and causation. The defendants must introduce specific evidence upon which a jury could reasonably find that the accident was not caused by a sidestand which was in violation of the standard. F.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Williams* at 464.

In opposition to the plaintiff's evidence, the defendants offer a report to the effect that the motorcycle complied with Safety Standard 123 when it left the assembly line in 1983. In addition, the defendants make various evidentiary objections which need not be considered here.

Although close, this court holds that a jury could reasonably find upon the evidence presented that the failure of the sidestand was not the proximate cause of the decedent's injuries. Given the standards for considering evidence in a Rule 56 motion, the defendants have shown that a genuine issue of material fact exists as to the element of violation and therefore as to causation as well. Considering the evidence presented here in the light most favorable to the defendants and giving the defendants the benefit of all reasonable inferences from the evidence presented, it is conceivable that a jury could reasonably find that the sidestand was not the cause of the accident. Plaintiff's motion for summary judgment as to liability is denied.

The report of the state trooper, while it supports plaintiff's theory of causation, is

in no way conclusive. The presence of a 215 foot long gouge mark on the road surface does not necessarily indicate that the sidestand caused that gauge. Giving the defendants' the benefit of all reasonable inferences that could be drawn from the trooper's report as this court must, the inference is that the gouge mark in the road was caused by the motorcycle sliding on the road surface after it fell. The eyewitness report that "the guy on the bike was going sideways rolling", when viewed in the light most favorable to the defendants, raises the inference that the sidestand did not contact the road and fail to retract, thus causing the gouge, but that the motorcycle could have turned onto its side and caused the gouge as it was rolling.

The plaintiff offers the shiny scuff marks on the underside of the sidestand as the basis of further evidence that the failure of the sidestand to retract in compliance with Safety Standard 123 was the cause of decedent's loss of control and eventual death. This condition on the sidestand at issue here is the main piece of evidence on which plaintiff's expert relies. *See* ¶¶ 6 and 7 of the Kopernik affidavit. The state trooper also noted on page 4 of his report that "[side]stand on [motorcycle's] left side ... was found to be scuffed and shiny on its underside indicating that it had been dragged recently on roadway".

The motorcycle apparently travelled over 360 feet after turning onto its side, rolling along the way according to one eyewitness, striking a guard rail and bouncing off that guard rail at an angle, if the trooper's diagram is at all accurate. It is a reasonable inference that the underside of the sidestand was scuffed after the motorcycle turned onto its side, not before. Without the benefit of having the deposition of the trooper available to review, it is impossible to determine how much the scuffed and shiny state of the sidestand's underside influenced the trooper in determining that the gouge mark in the road was caused by the sidestand dragging. In turn, the plaintiff's expert also interprets the condition of the underside of the sidestand, when viewed in conjunction with the trooper's report, to be conclusive evidence that the sidestand's failure to retract was the cause of the accident. Giving the defendants the benefit of all reasonable inferences that could be drawn from the fact that the motorcycle travelled up to 361 feet along the road surface and the berm, and struck a guard rail with some velocity after it turned over, the scuffed and shiny state of the sidestand's underside could reasonably be found by a jury to have been the result of such contact.

Also, the report offered by the defendants that the motorcycle complied with Safety Standard 123 in 1983, although somewhat remote in time, should be given some weight when viewed in a light most favorable to the defendants. The implication is that the motorcycle still complied in 1989 absent some alteration by someone other than the defendants. Again, the lack of discovery here prevents any possible evidence of alterations by any persons in the period between 1983 and 1989.

This is not to say that a reasonable jury could not find that the sidestand did in fact fail to retract on June 1, 1989, and caused decedent to lose control of the motorcycle. But the issue before this court is whether a reasonable jury could find upon the evidence presented that the sidestand complied with Safety Standard 123 and was therefore not the cause of the accident. This court finds that a jury could reasonably come to that conclusion. In denying a motion for summary judgment made by a defendant motorcycle manufacturer in a case involving an accident allegedly caused by a sidestand failing to retract in accordance with Safety Standard 123, this court has said:

> Pennsylvania courts favor submission to the jury of the issue of proximate cause of an accident. In fact the Pennsylvania Supreme Court has said that the 'question of proximate cause of an accident is almost always one of fact for the jury'.

*Bernotas v. Harley Davidson, Inc.,* 543 F.Supp. 519, 522 (D.C.Pa.1982) (*citing Kridler v. Ford Motor Company,* 422 F.2d 1182, 1185 (3rd Cir.1970)).

After discovery the plaintiff may be able to develop the facts so as to show that no genuine issue of material fact exists as to violation and causation. Plaintiff has not done so at this point in time.

An appropriate Order will issue.

### ORDER

AND NOW, this 2nd day of April, 1991, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED.